**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-01812-WJM

CHARLENE J. PACHECO,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER VACATING AND REMANDING**

    This matter is before the Court on Plaintiff Charlene J. Pacheco's Opening Brief (ECF No. 12) in support of her appeal from the final decision of Defendant Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"), denying Ms. Pacheco's application for supplemental security income. The Commissioner filed a Response Brief (ECF No. 13), and has provided the administrative record to the Court (ECF No. 8). Ms. Pacheco filed a Reply Brief. (ECF No. 14.) After carefully analyzing the briefs and the administrative record, the Court VACATES and REMANDS.

**I. JURISDICTION**

    The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

**II. BACKGROUND**

**A.    Basic Background Facts**

    Ms. Pacheco was born in 1960. (ECF No. 8, at 95.) She completed her high

school education and also attended three years of college. (*Id.* at 115.) Her Form SSA-3368 Disability Report ("Disability Report") indicates that she has worked in the past as a home care provider. (*Id.* at 110-11.) The vocational expert who testified at the hearing before the Administrative Law Judge described the position as a certified nurse's aide. (*Id.* at 46.)

Ms. Pacheco's Disability Report lists the following as illnesses, injuries, or conditions that limit her ability to work: "Auto accident injury to right elbow, problems with right hip after bone graft, left foot problems, problems with my neck and left side of body, depression, anxiety, claustrophobia, asthma." (*Id.* at 109.) The ALJ ultimately found that Ms. Pacheco had the following severe impairments: "intermittent pain of unclear etiology, residual symptoms of a right upper extremity injury, and depression." (*Id.* at 13.) However, based on the arguments made in Ms. Pacheco's Opening Brief and Reply Brief to this Court, the only alleged disability at issue in this appeal is Ms. Pacheco's depression. (*See* ECF No. 12, 14.) Therefore, this Order will be limited to a discussion and analysis of that condition.

Ms. Pacheco's application for supplemental security income lists her disability onset date as August 26, 2003. (*Id.* at 95.) At the hearing before the ALJ, Ms. Pacheco amended her disability onset date to April 3, 2007. (*Id.* at 29-30.)

**B.     Medical History Related to Depression**

The medical records contained in the administrative record contain the following information regarding Ms. Pacheco's depression. The first notation the Court has found

in the medical records regarding Ms. Pacheco's depression is a May 2, 2006 notation in a Progress Note from Southern Colorado Family Medicine stating, "anxiety, depression . . . [patient] has taken Zoloft in past which worked." (*Id.* at 168.)

A January 17, 2007 notation in a Progress Note from Southern Colorado Family Medicine states,

> Patient also here for depression in which she states she is having problems sleeping at night and has been taking 50 mg of Zoloft in the past for multiple years but states that its effects are not as evident as they were earlier. . . . Will increase Zoloft from 50 mg to 100 mg daily. The patient not suicidal at the current time.

(*Id.* at 158.)

On March 26, 2007, Dr. Jose G. Vega, Ph.D., examined Ms. Pacheco and filled out a Colorado Department of Human Services form in which Dr. Vega diagnosed Ms. Pacheco with major depression and checked a box indicating that Ms. Pacheco's expected length of disability was 12 months or longer. (*Id.* at 213-14.)

On June 28, 2007, David Gibbons, D.O., a physician with Regional Medical Evaluations, examined Ms. Pacheco, and noted in his report that Ms. Pacheco

> states that the primary reason that she is unable to work is due to depression. She states that she has been suffering from depression for a number of years. This results in disturbances in concentration. She states that she is not motivated. She has problems with sleeping which contributes to daytime somnolence. She has had suicidal thoughts in the past, however, she denies any suicidal ideation today. She is currently taking Zoloft for this which she feels is somewhat helpful.

(*Id.* at 178.) Dr. Gibbons concluded,

> The claimant admits to being able to accomplish activities of daily living without assistance. She is able to drive and has a driver's license. . . . No

> objective findings are elicited that substantially corroborate (or refute) limitations in the claimant's ability to sit, stand and/or walk in an 8-hour work day with normal breaks. . . . Since the claimant feels her primary limitation is due to depression, a psychiatric evaluation may be useful in further assessing this claimant.

(*Id.* at 180.)

On July 31, 2007, Dr. Alberta Ziomek, M.D., a state agency psychiatrist, issued a report conducting a review of medical records from three of Ms. Pacheco's prior medical appointments. (*Id.* at 195-208.) On the Psychiatric Review Technique Form used, Dr. Ziomek checked boxes indicating that Ms. Pacheco had no restriction of activities of daily living, and had only mild difficulties in maintaining social functioning, concentration, persistence, and pace. (*Id.* at 205.) In the report, Dr. Ziomek concluded,

> Clmt states a history of depression that was controlled in the past with 50mg. of Zoloft. She stopped taking the Zoloft and was recently (1/07) re-started on 100mg of Zoloft. This is when she began complaining of depressive symptoms and sleep problems. By [June 2007] she indicated that the Zoloft was helpful and had an intact mental status exam– indicating improvement was occurring. Clmt did not return function forms but in 6/07 drives and stated independent in all adl's. It is expected that by 1/08 clmt symptoms of depression will have completely stabilized and she will have no limitations in her ability to engage in SGA.

(*Id.* at 207.)

On the same day, July 31, 2007, Ms. Pacheco was admitted to the emergency room at the St. Mary-Corwin Medical Center based on her depression and thoughts of suicide. (*Id.* at 219.) Her Discharge Summary from August 2, 2007 stated,

> On admission to our unit, the patient detailed a longstanding history of struggles with depression, difficulties with treatment of this depression secondary to financial difficulties and absence of insurance. She has undergone trials of multiple selective serotonin reuptake inhibitors (SSRI)

> with little success. . . .  On admission, the patient indicated that she was
> amenable to a trial of new medications.  She was prescribed clonidine,
> Effexor XR, and trazodone, all of which she took yesterday. . . . She feels
> strongly that the psychosocial stressors present in her life are primarily
> responsible for the exacerbation in her depression and that therapy will be
> the most helpful intervention for her. . . . She has not had any thoughts of
> self-harm since admission and feels strongly that even in the context of
> her attempts, she never had any real desire for her life to end, "just would
> like for things to be easier."

(*Id.* at 225.)  In the report, Ms. Pacheco was diagnosed with "Major depression, recurrent, severe, without evidence of psychotic features" and "moderate . . . difficulties in relationships, financial difficulties, social isolation."  (*Id.* at 226.)

After being discharged, Ms. Pacheco began getting counseling at Spanish Peaks Medical Center ("Spanish Peaks"), where she most often saw Licensed Professional Counselor Cheryl Lizer.  (*Id.* at 263-91.)  Following that care, Ms. Lizer wrote a letter to Ms. Pacheco's attorney stating,

> I agree that Ms. Pacheco experiences a significant level of limitations due
> to her mental health issues.  Specifically, Ms. Pacheco experiences a high
> level of difficulty in her ability to sustain focus and concentration for an
> extended period of time without "special supervision."  She would have a
> difficult time interacting appropriately with the general public, primarily
> because of her intense levels of anxiety, self doubt and compulsions.  I
> agree that she would have marked difficulty in completing a "normal
> workday or work week without interruptions from psychologically based
> symptoms."

(*Id.* at 299.)

During this time, Ms. Pacheco also continued to be seen at Southern Colorado Family Medicine, where she was regularly given refills of her antidepressants.  (*Id.* at 234, 241, 244, 248, 249.)

On March 8, 2008, Dr. Vega again filled out a Colorado Department of Human Services form, in which he diagnosed Ms. Pacheco with major depression and checked a box indicating that Ms. Pacheco would be disabled for 12 months or longer. (*Id.* at 230.)

On November 1, 2008, Dr. Vega filled out a Residual Functional Capacity Evaluation (Mental), in which he evaluated Ms. Pacheco's mental abilities related to understanding and memory, concentration and persistence, social interaction, and adaptation. (*Id.* at 255-56.) On November 3, 2008, Dr. Vega evaluated Ms. Pacheco and drew up a six-page report, in which he stated,

> She does present with a significant psychiatric condition, evidencing numerous episodes of Major Depression, Recurrent, Severe Levels. Her condition may escalate to that of a Bipolar II condition. Bipolar II Disorder refers to more of a recurrent major depressive episodes, with hypomanic episodes. . . . [I]n terms of difficulties of functioning that she would have in everyday life or work activities, would be primarily with social interaction. She does not tolerate being around other people, having much difficulty getting along with others. She does have some difficulties with sustained attention and concentration.

(*Id.* at 261-62.)

**C.   Procedural History**

After Ms. Pacheco's application for supplemental security income was denied (*id.* at 49-52), she requested a hearing before an administrative law judge (*id.* at 53-55). Administrative Law Judge Peggy S. Ball ("the ALJ") presided over Ms. Pacheco's hearing on February 10, 2009. (*Id.* at 24-48.) Ms. Pacheco and vocational expert Nora Dunne ("the VE") testified at the hearing. (*Id.*)

6

On July 9, 2009, the ALJ issued her decision (*id.* at 11-22), concluding that Ms. Pacheco "has not been under a disability, as defined in the Social Security Act, since March 26, 2007, the date the application was filed." (*Id.* at 12, 22.) The ALJ made the following findings of fact and conclusions of law (in line with the five-part test for disability described infra). First, the ALJ held that Ms. Pacheco had not engaged in any substantial gainful activity since March 26, 2007. (*Id.* at 13.) Second, the ALJ held that, among other conditions, Ms. Pacheco's depression is a severe impairment. (*Id.* at 13-14.) Third, the ALJ held that Ms. Pacheco's severe impairments do not meet or equal the established listing of impairments under the governing regulations. (*Id.* at 14-15.) The ALJ then analyzed Ms. Pacheco's residual functional capacity (id. at 15-20), concluding that Ms. Pacheco "has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except she is restricted to work with an SVP of 3 or less and which can be performed by an individual with moderate limitations in maintaining social functioning" (*id.* at 15-16). As a result of this residual functional capacity assessment, the ALJ held that Ms. Pacheco is unable to perform any past relevant work. (*Id.* at 20-21.) However, the ALJ held that Ms. Pacheco is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 21-22.)

Ms. Pacheco appealed the ALJ's decision (*id.* at 6-7), and the Appeals Council denied her appeal (*id.* at 1-5). Ms. Pacheco appealed that decision by initiating this civil action on July 30, 2010. (ECF No. 1.)

## III.  ANALYSIS

### A.  Standard of Review

A district court's review of the Commissioner's determination that a claimant is not disabled within the meaning of the Social Security Act is limited.  *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992).  The review is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence.  *Id.* at 1497-98; *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla of evidence but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").  Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

**B.     Evaluation of Disability**

The criteria to obtain disability insurance benefits under the Social Security Act are that a claimant meets the insured status requirements, is younger than 65 years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

There is a five-step sequence for evaluating disability. See 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to a fourth step. *Id.* § 404.1520(e). At the fourth step, the claimant must show that the "impairment prevents

[him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *see also* 20 C.F.R. § 404.1520(f). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is not able to perform his or her previous work, the analysis proceeds to a fifth step. At the fifth step, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. § 404.1520(g).

**C.    Evaluation of Ms. Pacheco's Arguments**

In her Opening Brief and Reply Brief, Ms. Pacheco argues, *inter alia*, that the ALJ's written decision does not indicate that the ALJ properly weighed the opinions of Dr. Ziomek and Dr. Vega in determining Ms. Pacheco's residual functional capacity. The Court agrees.

"An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give any medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d) and § 416.927(d). *See id.* Those sections of Title 20 of the Code of Federal Regulations provide,

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's

10

> opinion controlling weight under paragraph (d)(2) of this section, we
> consider all of the following factors in deciding the weight we give to any
> medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion
> of a source who has examined you than to the opinion of a source who
> has not examined you.
>
> (2) Treatment relationship. . . .
>
> (3) Supportability.  The more a medical source presents relevant evidence
> to support an opinion, particularly medical signs and laboratory findings,
> the more weight we will give that opinion.  The better an explanation a
> source provides for an opinion, the more weight we will give that opinion.
> Furthermore, because nonexamining sources have no examining or
> treating relationship with you, the weight we will give their opinions will
> depend on the degree to which they provide supporting explanations for
> their opinions.  We will evaluate the degree to which these opinions
> consider all of the pertinent evidence in your claim, including opinions of
> treating and other examining sources.
>
> (4) Consistency.  Generally, the more consistent an opinion is with the
> record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. . . .
>
> (6) Other factors.  When we consider how much weight to give to a
> medical opinion, we will also consider any factors you or others bring to
> our attention, or of which we are aware, which tend to support or
> contradict the opinion.  For example, the amount of understanding of our
> disability programs and their evidentiary requirements that an acceptable
> medical source has, regardless of the source of that understanding, and
> the extent to which an acceptable medical source is familiar with the other
> information in your case record are relevant factors that we will consider in
> deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(d); *see also* 20 C.F.R. § 404.1527(d).  "After considering the

pertinent factors, the ALJ must give good reasons in the notice of determination or

decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350

F.3d 1297, 1301 (10th Cir. 2003) (quotation marks and brackets omitted).

The ALJ's decision is subject to reversal because there is insufficient indication that the ALJ, in weighing the opinions of Dr. Ziomek and Dr. Vega, sufficiently considered and weighed the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d). As to Dr. Ziomek's opinion, the ALJ stated,

> [T]he undersigned is assigning significant weight, in part, to the conclusions of [Dr. Ziomek]. This degree of limitation is supported by the claimant's presentation in her treatment records at Spanish Peaks, however, to afford her the considerable benefit of the doubt it will be found she has 'moderate' limitations in her social functioning. . . . [Dr. Ziomek] also indicated the claimant's affective disorder would not remain at a 'severe' level within the meaning of the Regulations for 12 continuous months. [The] undersigned, as noted previously finds there is sufficient evidence in file to support that the claimant's affective disorder limits her to work with an SVP of 3 or less and with moderate difficulties in social interaction.

(ECF No. 8, at 15, 20.) Given that the ALJ's only stated basis for giving Dr. Ziomek's opinion significant weight was that the opinion "is supported by claimant's presentation in her treatment records at Spanish Peaks," it appears that the ALJ only considered one of the factors in sections 404.1527(d) and 416.927(d), namely, the consistency of the opinion with the record as a whole.[1]

Significantly, there is no indication in the ALJ's decision that she considered the importance of the fact that Dr. Ziomek did not personally examine Ms. Pacheco in making the diagnosis. *See Havenar v. Astrue*, 438 F. App'x 696, 700 n.3 (10th Cir.

---

[1] And notably, Ms. Pacheco's treatment records at Spanish Peaks only constitute a portion of the relevant medical evidence as a whole.

2011) ("The regulations require an ALJ to give greater weight to the opinion of an examining physician . . . than that of a non-examining physician, or explain why the examining physician's opinion is not entitled to more weight."). Also, the ALJ's stated basis for giving significant weight to Dr. Ziomek's opinion – the treatment records from Spanish Forks – is undercut by the fact that the primary counselor Ms. Pacheco worked with at Spanish Forks was Cheryl Lizer, who ultimately wrote a letter concluding that Ms. Pacheco would have marked difficulty in completing a normal workday or work week without interruptions from psychologically based symptoms.[2] This suggests that the ALJ interpreted Ms. Lizer's treatment notes in a way that was inconsistent with Ms. Lizer's actual opinions regarding Ms. Pacheco's psychological condition. *Cf. Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) ("[A]n ALJ cannot substitute her lay opinion for that of a medical professional."). Further, it is also notable that the period of alleged disability that the ALJ was analyzing was March 26, 2007 through July 9, 2009, but Dr. Ziomek's opinion was rendered very early in this period, on July 31, 2007.

For these reasons, there is insufficient indication from the ALJ's written decision that the ALJ properly weighed the medical opinion of Dr. Ziomek. *See Jensen v. Barnhart*, 436 F.3d at 1165 ("The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."); *Winfrey v. Chater*, 92 F.3d at 1019 ("[T]he

---

[2] 31 of the 40 progress notes that make up Ms. Pacheco's medical records from Spanish Forks were written by Ms. Lizer. All of these progress notes were entered between August 8, 2007 and January 20, 2009, and therefore were not considered by Dr. Ziomek as part of her evaluation on July 31, 2007.

Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

The ALJ's decision is also subject to reversal because there is insufficient indication that the ALJ, in weighing the opinion of Dr. Vega, sufficiently considered and weighed the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  Addressing Dr. Vega's opinion, the ALJ stated,

> The undersigned has also considered the opinion of Dr. Vega . . . indicating [Ms. Pacheco] is essentially unable to function on a work environment due to her mental health conditions.  It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal.  Further, the doctor was presumably paid for the report.  Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.  The degree of limitations proposed by Dr. Vega is inconsistent with the claimant's treatment notes which show no significant cognitive difficulties and an ability to interact with no more than moderate restrictions.

(*Id.* at 20.)  Importantly, again, there is no indication in the ALJ's decision that the ALJ considered the fact that Dr. Vega (in contrast to Dr. Ziomek) personally examined Ms. Pacheco three different times as part of his three evaluations.  *See Havenar*, 438 F. App'x at 700 n.3.  Therefore, the ALJ's decision is also subject to reversal on this basis.  *See Jensen*, 436 F.3d at 1165; *Winfrey*, 92 F.3d at 1019.[3]

---

[3] As for the ALJ's mention of the fact that Dr. Vega examined Ms. Pacheco based on attorney referral, the Court notes that it is permissible for an ALJ to question a physician's credibility on that basis.  *See Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. 2001) ("An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel. . . .  The ALJ may not automatically reject the opinion for that reason alone, however.").  However, the Court points out that it appears that Dr. Ziomek was also consulted for purposes

Because the Court concludes that the ALJ's (apparent) failure to properly weigh the opinions of Dr. Ziomek and Dr. Vega requires remand, the Court need not address the other arguments raised by Ms. Pacheco. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (where the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal). The Court expresses no opinion as to Ms. Pacheco's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments. The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that the Commissioner's final decision is VACATED and the case is REMANDED for further proceedings consistent with this Order.

---

of making a disability determination, and not for treatment, but the ALJ failed to state that she was in any way discounting Dr. Ziomek's opinion on the same or similar basis.

Dated this 30th day of December, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge